Elliot BAKER, Plaintiff,

v.

R. H. MACY & CO., INC., and Enterprise Association, Steamfitters Local Union No. 638, Metal Trades Branch of the Associated Plumbers and Steamfitters, AFL–CIO, Defendants.

No. 77 C 912.

United States District Court,
E. D. New York.

July 30, 1981.

Gerald Murray, Jamaica, N. Y., for plaintiff.

Newman, O'Malley & Epstein, New York City, for defendant Enterprise Association by Patrick T. O'Malley, New York City.

## MEMORANDUM OF DECISION AND ORDER

NEAHER, District Judge.

Plaintiff, a plumber and steamfitter, brought this action for reinstatement and damages under section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, against his former employer, R. H. Macy & Co., Inc. ("Macy's"), and against the union that represented him while an employee at Macy's, Enterprise Association, Steamfitters Local Union No. 638, Metal Trades Branch of the Associated Plumbers and Steamfitters, AFL–CIO ("the union"). Plaintiff, employed by Macy's since 1973, was discharged on March 15, 1976, for allegedly stealing soda from a restaurant in the store. He denied the charge and notified the union. Macy's and the union agreed to submit plaintiff's grievance to an arbitrator and a hearing was held where plaintiff's interests were represented by counsel supplied by the union. In a decision dated June 1, 1976, the arbitrator found

> "that the Company [Macy's] did have just cause to discharge Elliot Baker under the Collective Bargaining Agreement." Defendant's Exh. A.

On April 29, 1977, plaintiff filed the instant action alleging, *inter alia*, that the union violated its duty of fair representation by failing: (1) to advise him that under the collective bargaining agreement arbitration was not the exclusive redress for discharge disputes; (2) to represent him adequately at the arbitration hearing; and (3) to attempt to vacate the adverse arbitration award.

By memorandum and order dated January 19, 1978, the Court dismissed as time-barred plaintiff's claims against Macy's,[1]

---

1. The Court ruled that plaintiff's claims against Macy's, brought 13 months after the discharge, were time-barred under the 90-day limitations period provided in N.Y. CPLR § 7511(a). This statute has recently been determined by the Supreme Court to govern § 301 actions brought against employers. *United Parcel Service, Inc. v. Mitchell,* —— U.S. ——, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981). In any event, since relief against an employer in a § 301 action is condi-

and ruled that since the parties had consented to arbitration, an attempt to vacate the award on the ground that the arbitrator lacked jurisdiction would have been fruitless, and therefore the union did not breach its duty to plaintiff by failing to appeal on that ground. The case proceeded to a bench trial, and after hearing the parties' evidence and the arguments of counsel, the Court finds that the union did not breach its duty of fair representation owed to plaintiff. The following constitute the Court's special findings of fact and conclusions of law. Rule 52(a), F.R.Civ.P.

## FINDINGS OF FACT

On March 14, 1976, plaintiff made a maintenance check of a refrigerator in Macy's Dutch Treat Restaurant, which was closed that day, a Sunday. Later that day two Macy's security guards confronted plaintiff and told him they had seen him pilfering cola from the soda machine in the Dutch Treat. The guards told plaintiff to go home, and reported the incident to Macy's chief of security. The next day plaintiff was asked to report to the security chief, who told him he was being discharged for violation of a company rule against stealing.

Plaintiff contacted Joseph Fitzgerald, the union's business agent, related his version of the incident and asked for the union's assistance. At that time, plaintiff said he would go to arbitration if he could not obtain reinstatement through more informal means. In an effort to reverse Macy's decision, Fitzgerald secured an opportunity for plaintiff to tell his story to Theodore Newman, Macy's Vice President for Personnel and Labor Relations. Newman thereafter reviewed the matter but concluded that Macy's strict policy of discharge for theft, regardless of the nature or value of the property involved, required confirmation of the dismissal. Macy's was experiencing annually approximately $35,000,000 in inventory "shortages" which were partly due to employee pilferage.

On April 15, 1976, plaintiff met in the executive offices of the union with Fitzgerald and Peter Kaiser, Esq., counsel to the union, to discuss the discharge and explore the available options. Kaiser is now deceased, but his testimony was preserved in the form of a deposition taken by plaintiff's present counsel and admitted in evidence by stipulation.

It was plaintiff's recollection that the only recourse discussed was arbitration. Fitzgerald testified, however, and in this regard was corroborated by the Kaiser deposition, that Kaiser told plaintiff he had a right to institute a civil action. It was explained to plaintiff why this route might entail greater delay than an arbitration proceeding, which Kaiser said he could arrange, if plaintiff desired, even though one was not expressly provided for in the collective bargaining agreement. The union generally takes grievances of this type to arbitration, which it has found to be a more informal and expeditious manner of dispute resolution. In addition, plaintiff was told that he would be permitted to have his own counsel, as well as one supplied by the union, at an arbitration hearing.

Plaintiff, who had already been out of work a month, was eager to resolve the matter quickly, and he repeated his earlier request that the union proceed to arbitration. The Court finds credible Fitzgerald's corroborated testimony and concludes that plaintiff was advised of the possibility of civil litigation as a remedy.

Kaiser spoke to counsel for Macy's and the two agreed to submit to arbitration the question whether the store had cause for discharging plaintiff. Thereafter, at plaintiff's suggestion, Kaiser interviewed Henry Pickrodt, an employee at Macy's who was

---

tioned upon the employee's carrying his burden of demonstrating that the union breached its duty of fair representation at the arbitration proceeding, *Hines v. Anchor Motor Freight,* *Inc.,* 424 U.S. 554, 570–71, 96 S.Ct. 1048, 1059, 47 L.Ed.2d 231 (1976), in view of the Court's disposition of plaintiff's claim against the union, no recovery could be had against Macy's.

on duty near the Dutch Treat on the afternoon of the alleged theft.[2]

On May 18, 1976, the hearing was held under the auspices of the New York State Board of Mediation and lasted from approximately 10:00 a. m. until after 6:00 p. m. The union, on behalf of plaintiff, was represented by Kaiser, and Macy's was represented by S. Lester Block, Esq., Senior Vice President for Government Relations and Labor Counsel. The testimony of plaintiff and Henry Pickrodt each lasted over an hour and each was extensively cross-examined by Block and questioned by the arbitrator.

Macy's presented the two security guards who had been on duty near the Dutch Treat on March 14 and who testified to seeing plaintiff fill a plastic container from the restaurant's soda machine. They followed him to the plumbers' rest area and testified that when they confronted him with their observations, plaintiff admitted the theft but stated it was his first infraction and pleaded for leniency. The chief of security testified at the hearing and corroborated many of the events related by the guards. Theodore Newman, the Macy's Vice President who had previously reviewed plaintiff's discharge, testified as to the store's need to apply uniformly its strict anti-pilferage policy.[3]

Each of these witnesses was questioned by the arbitrator, who took an active role in testing credibility and suggesting further areas of inquiry. Although the live testimony of Kaiser could not be had at trial, the Court finds on the basis of the testimony of the several witnesses who were present at the arbitration hearing that Kaiser's presentation of evidence and cross-examination of witnesses was at least reasonably competent.

Following the arbitrator's decision that Macy's had cause for discharging plaintiff, no collateral attack on the award pursuant to N.Y. CPLR § 7511 was attempted.

## CONCLUSIONS OF LAW

■ The traditional starting point in fair representation cases is the Supreme Court's statement of the law in *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967):

"A breach of the statutory duty of fair representation occurs only when a union's conduct towards a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith."

Since federal policy favors arbitration as a means of resolving labor disputes, *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578, 80 S.Ct. 1347, 1350, 4 L.Ed.2d 1409 (1960); district courts in fair representation cases

"should not undertake to review the merits of arbitration awards but should defer to the tribunal chosen by the parties finally to settle their disputes. Otherwise, 'plenary review by a court of the merits would make meaningless the provisions that the arbitrator's decision is final, for in reality it would almost never be final.' *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 599 [80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424] ... (1960)." *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 563, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976).

■ No grievance procedure can be expected to be error-free, and a showing of mere negligence or errors in judgment is insufficient to sustain a plaintiff's burden of showing his union breached its duty of fair representation. *Id.* at 570–71, 96 S.Ct. at 1059. See *Wyatt v. Interstate & Ocean Transport Co.*, 623 F.2d 888, 891 (4th Cir.

---

2. Plaintiff also asserts that he gave Kaiser the names of two other employees he believed might have had information relevant to the incident. These men did not testify at the hearing before the arbitrator. Kaiser stated at his deposition that plaintiff had given him only Pickrodt's name.

3. Newman stated at trial that Macy's does not discriminate on the basis of religion, that he had received no such complaints from employees, and that he had been wholly unaware of plaintiff's religious background. At trial, plaintiff stated that as far as he knew, the Macy's guards had no particular animus towards him.

1980). Rather, a plaintiff must show "substantial evidence of fraud, deceitful action or dishonest conduct," *Humphrey v. Moore*, 375 U.S. 335, 348, 84 S.Ct. 363, 371, 11 L.Ed.2d 370 (1964), or conduct so arbitrary or perfunctory as to be deemed irrational, *Jones v. Trans World Airlines, Inc.*, 495 F.2d 790, 798 (2d Cir. 1974), before a federal court will conclude that the union's performance so tainted the grievance procedure as to require the vacating of the arbitrator's presumptively final award. Finally, the Supreme Court has said that the "complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to good faith and honesty of purpose in the exercise of its discretion." *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953).

See generally, *Ryan v. New York Newspaper Printing Pressmen's Union*, 590 F.2d 451, 455–56 (2d Cir. 1979).

■ With these principles in mind, we turn to the facts of plaintiff's case. At the outset, we must reject plaintiff's claim that the union breached its duty by not telling him that the collective bargaining agreement excluded discharge disputes from arbitration. Such a statement would have been incorrect. Federal policy requires that language excluding arbitration be "clear and unambiguous," *International Association of Machinists and Aerospace Workers, AFL–CIO v. General Electric Co.*, 406 F.2d 1046, 1048 (2d Cir. 1969); and it is plain that Article VI of the collective bargaining agreement, relied upon by plaintiff, does no more than exempt discharge disputes from the *mandatory* arbitration that the agreement provides for other types of disputes. The parties to the collective bargaining agreement remained free to consent to arbitration—indeed, this appears to have been the customary practice—and in light of the policies favoring arbitration, we cannot say that such an interpretation of the agreement resulted in fundamental unfairness to plaintiff. See *Ness v. Safeway Stores, Inc.*, 598 F.2d 558 (9th Cir. 1979).

■ While it may be true that the alternative of civil litigation was available, the union did not breach its duty to plaintiff by pursuing the arbitration route. The union, which was plaintiff's representative, not his servant, had wide discretion in determining how best to resolve this dispute, *Ford Motor Co. v. Huffman, supra*, and subject to the requirement of good faith, it could even have made its decision without consulting plaintiff. See *Freeman v. O'Neal Steel Inc.*, 609 F.2d 1123 (5th Cir. 1980); *Whitten v. Anchor Motor Freight, Inc.*, 521 F.2d 1335, 1341 (6th Cir. 1975), *cert. denied*, 425 U.S. 981, 96 S.Ct. 2188, 48 L.Ed.2d 807 (1976).

■ In any event, the evidence at trial established that plaintiff was informed of the available remedies for his discharge and that on two occasions he stated his preference for the more expeditious route of arbitration. Moreover, even if plaintiff might have wanted to proceed to arbitration but was concerned over the quality of representation he would be afforded by union counsel, the record shows that plaintiff was informed that if he wished he could bring his own attorney to the grievance hearing.

■ Plaintiff next complains of the manner in which the union conducted the arbitration. Mindful, however, that an adverse arbitration award does not, in hindsight, convert mere errors of tactics or judgment into a breach of the union's duty of fair representation, *Warren v. International Brotherhood of Teamsters*, 544 F.2d 334 (8th Cir. 1976), the Court is unable to conclude from this record that the representation afforded plaintiff was so perfunctory as to amount to a breach of the union's duty.

Fitzgerald and Kaiser first made informal efforts to obtain plaintiff's reinstatement. When arbitration became necessary, Kaiser interviewed his witnesses prior to

the hearing,[4] competently presented their testimony and cross-examined each of Macy's witnesses. The hearing lasted an entire day and appears to have explored in depth what was, in essence, a single incident not characterized by factual complexity. Under these circumstances, the Court concludes that the union's representation of plaintiff at the hearing was not inadequate and unfair. Compare *Tatum v. Frisco Transportation Co.*, 626 F.2d 55 (8th Cir. 1980) (union called no witnesses at arbitration hearing, presented no affidavits, failed to inform employee of time of hearing, and ignored several obvious sources of proof).

■ Finally, plaintiff contends that the union breached its duty by failing to institute a civil proceeding to vacate the arbitrator's award. As discussed above, the union did not have to consult plaintiff as long as its decision not to appeal was made in good faith. Under N.Y. CPLR § 7511 an arbitrator's award may be vacated for two main reasons: first, because of corruption or fraud in procuring the award or partiality of the arbitrator; and second, because the arbitrator exceeded his power.

Plaintiff has not alleged, nor does the record suggest, circumstances that might justify vacating the award on the first ground. With regard to the second ground, the arbitrator answered no more than the precise question voluntarily submitted to him by the union and Macy's. In addition, as the Court has already concluded, the collective bargaining agreement embodied no exclusion of discharge disputes from ar-

bitration, and the parties did not act unreasonably—in part to satisfy plaintiff's desire for expedition—in agreeing to submit his claim to arbitration. It would be difficult therefore to see how the union could have prevailed upon a State court to find that the arbitrator "exceeded his power." N.Y. CPLR § 7511(b)(1)(iii).

■ The union has wide discretion, as representative of all employees in the bargaining unit, to determine in good faith when further pursuit of an individual's grievance would be fruitless and a drain upon the union's limited resources. See *Humphrey v. Moore, supra; Harris v. Chemical Leaman Tank Lines, Inc.*, 437 F.2d 167 (5th Cir. 1971); *Bazarte v. United Transp. Union*, 429 F.2d 868 (3d Cir. 1970). Under the circumstances of this case, we cannot conclude that the union acted improperly in deciding not to pursue plaintiff's grievance through yet another stage of proceedings. *Vaca v. Sipes, supra*, 386 U.S. at 190–95, 87 S.Ct. at 916–19.

Accordingly, since plaintiff failed to meet his burden of showing that the union's conduct was "arbitrary, discriminatory or in bad faith," the complaint is dismissed on the merits.[5]

SO ORDERED.

The Clerk of the Court is directed to enter judgment in favor of defendants R. H. Macy & Co. and Enterprise Association dismissing the complaint.

---

4. With regard to the two employees who were not called at the hearing, see n.2, *supra*, even if we were to assume that Kaiser's recollection at his deposition was flawed and that plaintiff had in fact given these names to union counsel as potential witnesses, we would have to accord Kaiser wide latitude in reviewing his decision not to call these men. Plaintiff's disagreement with the wisdom of that decision, after the fact, is insufficient to establish a breach of the union's duty. See *Easley v. District 50, Allied & Technical Workers*, 377 F.Supp. 729 (M.D.La. 1974), *aff'd mem.*, 524 F.2d 1230 (5th Cir. 1975).

5. Plaintiff alleged that Macy's discharged him in part because of personal animosity and religious discrimination. This accusation was un-

supported by any evidence adduced at trial. See n.3, *supra*. In any event, as the discussion above demonstrates, it is clear that we may not reach the merits of the discharge because plaintiff has failed to show that the union's conduct was so deficient as to require vacating the otherwise final arbitrator's award. Since plaintiff makes no claim that the union or its officers harbored any impermissible animus against him, his unsubstantiated allegations against Macy's, see *Whitten v. Anchor Motor Freight Inc.*, 521 F.2d 1335, 1340 (6th Cir. 1975), *cert. denied*, 425 U.S. 981, 96 S.Ct. 2188, 48 L.Ed.2d 807 (1976), present no bar to our conclusion that the union did not act in an arbitrary or discriminatory manner.